UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
DR. DEBORAH L. WORTHAM as Superintendent of
the Roosevelt Union Free School District, ROSE
GIETSCHIER, President of the Roosevelt Union Free
School District Board of Education, THE BOARD OF
EDUCATION OF THE ROOSEVELT UNION FREE
SCHOOL DISTRICT, ROOSEVELT UNION FREE
SCHOOL DISTRICT and STUDENTS 1-5 for
themselves and class representatives,
for themselves and for itself and on behalf of its
students (John and Jane Does 1-60 being
student victims whose names are withheld for privacy
purposes), staff and community,

                       Plaintiffs,

            -against-

WANTAGH UNION FREE SCHOOL DISTRICT,
LYNBROOK UNION FREE SCHOOL DISTRICT and
NASSAU COUNTY PUBLIC HIGH SCHOOL
ATHLETIC ASSOCIATION (SECTION VIII),

                       Defendants.
---------------------------------------------------------------------X

**DOCKET NO.:**

**JURY DEMAND**

**CLASS ACTION COMPLAINT**

***TRIAL BY JURY IS DEMANDED***

       PLAINTIFFS, DR. DEBORAH L. WORTHAM as Superintendent of the Roosevelt Union

Free School District, ROSE GIETSCHIER, President of the Roosevelt Union Free School District

Board of Education, THE BOARD OF EDUCATION OF THE ROOSEVELT UNION FREE

SCHOOL DISTRICT, ROOSEVELT UNION FREE SCHOOL DISTRICT ROOSEVELT UNION

FREE SCHOOL DISTRICT and STUDENTS 1-5 for themselves and for itself and on behalf of

its students (John and Jane Does 1-60 being student victims whose names are withheld for

privacy purposes), staff and community, by and through their attorneys, The Law Offices of

Frederick K. Brewington, state and allege the following claims against the above-named

Defendants as follows:

## PRELIMINARY STATEMENT

1.      This a civil action seeking relief for the actions of Defendants WANTAGH

UNION FREE SCHOOL DISTRICT, LYNBROOK UNION FREE SCHOOL DISTRICT and

NASSAU COUNTY PUBLIC HIGH SCHOOL ATHLETIC ASSOCIATION (SECTION VIII).

2.      This action seeks to obtain equitable remedies, recover damages and other relief

for pain and suffering caused by Wantagh, Lynbrook, and Section VIII's recklessness, failure

to supervise, failure to discipline, and failure to intervene during instances of harassment,

violations of civil rights, and the intentional infliction of emotional distress.

3.      Defendants allowed spectators and people in the bleachers inside the

gymnasium of Lynbrook High School to spit on, bark at, an chant racial slurs, at member of

the of Roosevelt High School Cheerleaders, all in violation of 42 U.S.C. § §1983, 1985, Due

Process Clause of the First and Fourteenth Amendments of the United States Constitution and

the applicable New York State Laws.

4.      Defendants WANTAGH UNION FREE SCHOOL DISTRICT, LYNBROOK

UNION FREE SCHOOL DISTRICT, and NASSAU COUNTY PUBLIC HIGH SCHOOL

ATHLETIC ASSOCIATION (SECTION VIII) are responsible for the actions, of their students,

spectators and staff at the sporting events which they sponsor and hold at their facilities and

are obligated intervene and prevent actions taken by their students, spectators and staff and

failed to prevent the outrageous, discriminatory, vile, and racist attacks upon ROOSEVELT

UNION FREE SCHOOL DISTRICT Student victims, and refused to protect the ROOSEVELT

UNION FREE SCHOOL Student victims from subsequent harassment and vile discriminatory

treatment, in violation of 42 USC §§1983, 1985, 1988 and the First and Fourteenth Amendments

to the United States Constitution.

## JURISDICTION AND VENUE

5.      This action is brought pursuant to 42 U.S.C. §1983, 1985, 1988 and the First and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded upon  28 U.S.C. §§ 1331, 1343 and 1344, and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this Court, pursuant to 28 U.S.C.A. § 1367, to hear and decide any and all claims arising under state law.

6.      Prior hereto and within the proper time allotted by statute, Plaintiff filed a Notice of Claim in compliance with General Municipal Law Section 50 et seq. and CPLR 215, as against each municipal defendant (Exhibit "A").  More than 30 days have elapsed and defendants have failed and refused to pay or adjust same.

7.      This Court is requested to exercise pendent jurisdiction over Plaintiffs' NYSHRL, New York Civil Rights Law and other State Law claims pursuant to 28 U.S.C. § 1367 because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claim as to form part of the same case or controversy under Article III of the United States Constitution.

8.      Venue is appropriate in the Eastern District of New York, as the entity defendants WANTAGH UNION FREE SCHOOL DISTRICT, LYNBROOK UNION FREE SCHOOL DISTRICT, AND NASSAU COUNTY PUBLIC HIGH SCHOOL ATHLETIC ASSOCIATION (SECTION VIII)) and the Plaintiffs in question are located in Nassau County. Upon information and belief the other Defendants also reside and maintain their offices in the Eastern District of New York and the situs of the incident giving rise to these claims occurred in the Eastern District of New York.

## PARTIES

9.      At all times relevant, ROOSEVELT UNION FREE SCHOOL DISTRICT is a municipal entity and public school of the United States, has been a resident of Roosevelt, New York, County of Nassau.

10.     DR. DEBORAH L. WORTHAM is the Superintendent of the Roosevelt Union Free School District and is the chief administrator of said District with the responsibility to oversee that education, care, well being and proper treatment of the students, staff and residents of the District she serves.

11.     ROSE GIETSCHIER, is the President of the Roosevelt Union Free School District Board of Education, and is a duly elected Trustee of the that Board and resides in the community of Roosevelt.

12.     THE BOARD OF EDUCATION OF THE ROOSEVELT UNION FREE SCHOOL DISTRICT is the duly elected body of trustees charged with the oversight and governance of the Roosevelt Union Free School District as well as caring for the students, staff and residents of the District by whom they were elected.

13.     ROOSEVELT UNION FREE SCHOOL DISTRICT STUDENTS 1-5 on behalf of a Class of all Roosevelt School District students, parents, staff and administrators who were subjected to the detrimental, vulgar and racist treatment during include but are not limited to occurrences at the Lynbrook Senior High School, located at 9 Union Avenue, Lynbrook, NY, 11563, on or about February 15, 2023 and at Wantagh Senior High School located at 3297 Beltagh Ave, Wantagh, NY 11793, on or about February 17, 2023 and thereafter through the actions and inactions of Lynbrook, Wantagh and NCPHSAA their personnel, their spectators, their students, their employees, their agents, their charges, their decision makers and their administrators in violation of § 1983 and the NYSHRL.

14.     At all times relevant, Students 1 through 5, were students and residents of the Roosevelt School District and representatives of John and Jane Does 1-60 student victims, are students, staff and community members, and are, residents of Roosevelt School District, Roosevelt, New York, County of Nassau.

15.     Defendant WANTAGH UNION FREE SCHOOL DISTRICT, (hereinafter "WUFSD") is a municipal entity and public school, located within the town of Wantagh, County of Nassau.

16.     Defendant LYNBROOK UNION FREE SCHOOL DISTRICT, (hereinafter "LUFSD")is a municipal entity and public school, located with the town of Lynbrook, New York, County of Nassau.

17.     Defendant NASSAU COUNTY PUBLIC HIGH SCHOOL ATHLETIC ASSOCIATION (Section VIII) (hereinafter "NCPHSAA" or "Section VIII") is a municipal entity, with its offices in Garden City, New York, County of Nassau.

18.     Section VIII NCPHSAA, is responsible for oversight of all interscholastic athletic events in Nassau County, also failed to take any preemptive acts or any form of intervention to prevent or stop or curtail the ongoing abuse and acts of intimidation and disrespect of the Roosevelt students which was based on race and color.

19.     Despite knowing that this occurs in schools throughout Nassau County toward players of color, at no time was this level of disrespect addressed in any manner by any adult employed to supervise and/or educate the children in their charge. This is in direct violation of its own rules and code of ethics.

## FACTUAL ALLEGATIONS

20.     The Roosevelt Union Free School District (RUFSD) is a public school district serving much of the Greater Roosevelt area in the Town of Hempstead, in Nassau County, on the South Shore of Long Island, in New York, United States. The district primarily serves the unincorporated hamlet and CDP of Roosevelt, in addition to small portions of the unincorporated hamlet and CDP of Baldwin and the Incorporated Village of Freeport.

21.     As of the 2020-21 school year, there were 3,180 students enrolled in the district. Of those 3,180 students, 1,691 (53%) were males while 1,489 (47%) were females. The racial makeup of the students in the district during the 2020-21 school year was 42% Black or African American (1,345 students), 0% White (2 students), 0% Asian/Native Hawaiian/Other Pacific Islander (11 students), 0% Indian/Alaska Native (0 students), and 0% Multiracial (8 students). 57% of enrolled students were of Hispanic or Latino heritage of any race (1,814 students)

22.     On February 15, 2023 during a post season playoff basketball game at Lynbrook High School between Roosevelt High School Boys Basketball Team and Lynbrook High School

Boys Basketball Team, a disturbance occurred.   Spectators along with people in the bleachers inside the gymnasium of Lynbrook High School were spitting on, barking at, and chanting racial names including but not limited to the word "nigger" at cheerleaders of Roosevelt High School.

23.     While this behavior by spectators and people in the bleachers was happening, onlookers to these improper and heinous acts, which included supervisory personnel from Lynbrook  High School did not intervene until staff from Roosevelt High School stressed to the Lynbrook Athletic Director that the matter be dealt with.

24.     To the contrary, with the exception of the expulsion of certain students from the premises, repercussions have not been taken to address and prevent this level of abuse and complete lack of "sportspersonship".

25.     The racial comments and actions of Spectators and people in the bleachers endured by cheerleaders of Roosevelt High School were racist, demeaning, degrading, and intended to intimidate and dehumanize the students from Roosevelt High School .

26.     Following the incident that occurred at Lynbrook High School on February 15, 2023, the students of Roosevelt High School were again subjected to improper and racially charged heinous acts.

27.     On February 17, 2023, at Wantagh High School, the Roosevelt High School Boys Basketball Team was competing in the second round post season playoff athletic competition.

28.     When the players from Roosevelt Boys Basketball Team were introduced, a large group of young white men dressed in white t-shirts and sweat-shirts stood up in the bleachers, and started booing and,  as depicted in the photo below,  physically turned their backs to the basketball court as a sign of disregard and disrespect.



29.    The cheerleaders from Roosevelt High School were verbally abused, referred to as "niggers", subjected to vociferous booing, as well as comments being hurled at the players and cheerleader such as " Who's your daddy" and were being flashed middle fingers throughout the game.

30.    During the game, the use of the word "nigger" was regularly made by players and spectators towards students of Roosevelt High School and there was no intervention by officials, supervisors or staff from the Wantagh School District or Section VIII NCPHSAA to stop such behavior.

31.    Section VIII NCPHSAA, is responsible for oversight of all interscholastic athletic events in Nassau County and at these two events, it failed to take preemptive acts or any form of intervention to prevent or stop or curtail the ongoing abuse and acts of intimidating, threatening, demeaning, and disrespecting the Roosevelt students which was based on race

and color.

32.    Furthermore, at no time was this level of disrespect addressed in any manner by an adult employed to supervise and/or educate the children in their charge at Wantagh High School.

33.    There was never an attempt made or effort put forth by an employee of Wantagh School District to make the overtly disrespectful behavior stop.

34.    The racially charged verbally abusive statement "Who's your daddy" was made during the game and went unchallenged with no intervention by personnel from Wantagh School District.

35.    When the basketball game ended, the large group of young white men dressed largely in white t-shirts and sweat-shirts rushed the playing court and prevented the traditional hand shaking between the two teams.

36.    This action by the large group of young white men created a mob like environment that was uncontrolled and became a safety concern for the supervisors from Roosevelt as well as both players and cheerleaders from Roosevelt High School and visitors.

37.    The safety of the Roosevelt players was a priority of their head coach Lydell Smith who felt the need at the moment when his team lined up to shake hands to congratulate Wantagh on their victory and as they waited for Wantagh's coaches and players, the rushed the basketball court, then he decided to tell his team (Roosevelt players) to head to the locker room for safety reasons and instructed his assistant coach Taurus Reed to stay behind and shake Wantagh's coaches and players hands.

38.    The large group of young white men who created a mob like environment consisted of students from both Lynbrook High School and Wantagh High School in a collaboration aimed to intimidate, threaten, demean, and disrespect the Roosevelt students based on race and color.

39.    Lynbrook, Wantagh and Section VIII NCPHSAA their employees, agents, supervisors, administrator, officials and decision makers failed to address crude and abusive

language and gestures by players, spectators, and others which aimed at and directed to Roosevelt students and spectators.

40.     Once informed of the outrageous actions taken against the Roosevelt students and spectators, Lynbrook, Wantagh and Section VIII NCPHSAA failed to take prompt and appropriate action to address the numerous clear violations of its rules, policies and procedures and the laws addressing acts of racial and color discrimination.

41.     As a result of the racially charged incidents that occurred at both Lynbrook High School and Wantagh High School, the students of Roosevelt High School sustained mental anguish, mental pain, psychological trauma, and loss self worth.

42.     The following statements are from students of Roosevelt High School (including prospective Class members and representatives) and describes their experiences and those which were experienced by members of the class explaining how they felt and what occurred on February 17, 2023 at Wantagh High School:

•     I felt intimidated by fans and felt harassed and it really messed me up mentally once the racial slurs were being said in the stands and on the court. I specifically     heard the "N word" from player with the number 13 on his Jersey on opposing team.

•     I felt that the school was racially motivated. I heard trash talk but the environment   as just weird. I heard the "N word" often times.

•     When we walked in the gym the place was normal at first but then when the game   started there was a lot of racial slurs throughout the game and it was a different type of disrespect during the game, I heard the "N word" many times.

•     The fans were saying crazy things like racist, like being racial. They didn't shake  our hands after the game... saying disrespectful stuff in the stands;  chanting

        "Who's your daddy" and saying the "N word".

•     The second game started we felt a different type of energy because our team has been in hostile environments before, but it just felt off. I specifically heard racial     slurs like the "N word" and "Where is your daddy". The crowd was also yelling      out "Who's your daddy?" Also, after the game I felt totally unsafe with how the      crowd stormed the court and

bum-rushed us and the team.

•       The second we entered the gym it was very aggressive and hostile environment. The introduction alone there was very unsportsmanlike conduct. Racial slurs were being shouted out by the fans, very aggressive and just got targeted. While      on the bench I heard someone call me Ramen guy. Aggressive talk and just made    us feel less, especially since we lost and that just made me feel like garbage.  There's a difference between talking trash and what they did because they took it to a whole other level.

•       We felt a different type of hatefulness as soon as we walked in and when the game started.

43.     The wrongful actions have a historical base as same have been ongoing for a period of time, however the most recent acts include, but are not limited to, occurrences at Lynbrook High School on February 15, 2023 and at Wantagh High School on February 17, 2023 and thereafter through the actions and inactions of Lynbrook, Wantagh and NCPHSAA their personnel, their spectators, their students, their employees, their agents, their charges, their decision makers and their administrators.

44.     January 24, 2024 Dr. Deborah L. Wortham employed as a superintendent at the Roosevelt Union Free School District, and appeared as a witness on behalf of Roosevelt Union Free School District at 50-h Hearing testified to the fact that coaches, supervisors, and athletic director are responsible for supervising the students, the Roosevelt athletes during away games.

45.     Dr. Deborah L. Wortham was informed by staff members of Roosevelt High School who attended basketball game at Lynbrook High School on February 15th, 2023 about when the spectators, the Lynbrook cheerleaders spoke negatively using unacceptable terms towards Roosevelt cheerleaders and spit on them.

46.     The Roosevelt High School staff members that attended basketball game at Lynbrook High School on February 15th, 2023 and informed the superintendent of Roosevelt High School Dr. Wortham were Cheerleading coach Ms. Rochelle Gooding, Board  member Ms. Susan Gooding, and  Athletic director Eamonn Flood.

47.     Roosevelt High School Athletic director Eamonn Flood informed Dr. Wortham that he met with Lynbrook High School Athletic director about the incident that took place at Lynbrook High School on February 15, 2023 and the outcome that Ms. Wortham was told is that one or two students that were involved in the incident were suspended for one game.

48.     Roosevelt High School Athletic director Eamonn Flood submitted a report about the incident that occurred at Lynbrook High School on February 23, 2023 to Dr. Wortham, which contain the names of the High School students who were calling Roosevelt cheerleaders offensive names which included Lynbrook students as participants.

49.     Dr. Wortham testified to the fact that in the Notice of Claim it states that behavior was only addressed after staff from Roosevelt sought out the Lynbrook athletic director which she deemed to be factual due to the suspensions of a couple of Lynbrook students.

50.     Dr. Wortham testified that she was informed by Roosevelt High School staff members about the incident that occurred on February 17, 2023, at Wantagh High School. The staff members were the same Roosevelt staff members that informed her about the incident at Lynbrook High School. Board member Mrs. Susan Gooding, Cheerleading coach Mrs. Rochelle Gooding, and athletics director Mr. Eamonn Flood who all also attended the basketball game at Wantagh High School on February 17, 2023.

51.     Roosevelt Superintendent Dr. Wortham was informed that the group of white male students who wore T-shirts en masse and turned their backs on the Roosevelt students while they were being introduced, the shouting of who's your daddy, calling the students, again, nigger and the appearance of students from Lynbrook from two days earlier, at Wantagh High School basketball game participating in the heinous acts against Roosevelt students.

52.     Dr. Wortham superintendent of Roosevelt High School made reference to a photo of students from Lynbrook High and Wantagh High School turning their backs to the court as Roosevelt basketball team was being introduced and the adults surrounding them did not engage with it.

53.    Human Resources Eric Nezowitz and Roosevelt athletics director Eamonn Flood investigated the incident that occurred at Wantagh High School on February 17, 2023. Mr Nezowitz  and Mr. Flood spoke with coaches and supervisors who were at the Wantagh High School on February 17, 2023 as well as viewed videos of this incident.

54.    Human resources conducted a full investigation. They talked to coaches. Coaches and students submitted statements regarding the incident that occurred on February 17, 2023. Human Resources Eric Nezowitz submitted reports to Roosevelt superintendent Dr. Wortham since he  worked in conjunction with Roosevelt athletics director Mr. Flood on the investigation of this incident at Wantagh High School on February 17,2023.

55.    Roosevelt superintendent Ms. Wortham spoke with Wantagh High School superintendent several days after incident at Wantagh High School. Mr. Flood, Roosevelt athletics director spoke with Wantagh athletic director regarding incident that occurred on February 17, 2023 at Wantagh High School.

56.    Superintendent of Roosevelt High School Dr. Wortham testified to the fact that Wantagh school district witnessed this behavior by the students but did not stop it and behavior persisted throughout the entire game.

57.    As a result of the above negligence and the consequent harm suffered by the infant Plaintiffs, Plaintiff seeks compensatory damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS, and any other such relief as this Court may deem appropriate.

## CLASS ACTION ALLEGATIONS

58.    This class action is brought pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (c)(4) seeking liability-phase injunctive and declaratory relief on behalf of a Class of all Roosevelt School District students, parents, staff and administrators who were subjected to the detrimental, vulgar and racist treatment  during include but are not limited to occurrences at the Lynbrook Senior High School, located at 9 Union Avenue, Lynbrook, NY, 11563, on or about February 15, 2023 and at Wantagh Senior High School located at 3297 Beltagh Ave, Wantagh, NY

11793, on or about February 17, 2023 and thereafter through the actions and inactions of Lynbrook, Wantagh and NCPHSAA their personnel, their spectators, their students, their employees, their agents, their charges, their decision makers and their administrators in violation of § 1983 and the NYSHRL. Plaintiffs reserve the right to amend the definition of the Class based on discovery or other factual or legal developments.

59.    Plaintiffs also bring this Class Action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) seeking monetary damages and other make-whole relief on behalf of a Class of all non-white applicants seeking to be treated in a non-discriminatory fashion and not be subjected to abuse and race and color based discrimination in violation of §§ 1983, 1985 the NYSHRL, New York State Civil Rights Law and other laws of the State of New York.    Plaintiffs reserve the right to amend the definition of the Class based on discovery or other factual or legal developments.

60.    Students 1 through 5 are members of the Class they seeks to represent.

61.    The members of the Class identified herein are so numerous that joinder of all members is impracticable.

62.     There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members, including:

(a)    Whether Defendants' policies or practices for conducting sporting events and addressing the wrongful, abusive and discriminatory actions of their students, spectators, officials, and staff has failed to address the actions of discrimination against those in the class;

(b)    Whether Defendants' actions and failures in allowing the discriminatory, racist and abusive actions by their students, spectators, officials, and staff violate §§ 1983, 1983, NYSHRL,

New York State Civil Rights Law and other state laws;

&copy;       Whether Defendants' policies, actions and failures have a disparate impact on Plaintiffs and the class they represent; and

(d)       Whether equitable remedies, injunctive relief, and other relief for the Class are warranted to address the discriminatory effects of Defendants' misconduct.

63.       The claims of Students 1through 5 are typical of the claims of the Class.

64.       Dr. Wortham, Ms. Gietschier,  and Students 1through 5 will fairly and adequately represent and protect the interests of the members of the Class.

65.       Plaintiff has retained counsel competent and experienced in complex class actions, discrimination litigation, and the intersection thereof.

66.       Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendants have  acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. The Class Members are  entitled to injunctive relief to end Defendants' common, uniform, unfair, and discriminatory policies and practices.

67.       Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law  predominate over any questions affecting only individual members of the Class, and because a class action is  superior to other available methods for the fair and efficient adjudication of this litigation. The Class Members have been damaged and are  entitled to  recovery  as  a  result of Defendants' common, uniform, unfair,  and discriminatory

policies and practices.

**AS AND FOR COUNT ONE**
**AGAINST DEFENDANTS WANTAGH UNION FREE SCHOOL DISTRICT,**
**LYNBROOK UNION FREE SCHOOL DISTRICT and NASSAU COUNTY PUBLIC**
**HIGH SCHOOL ATHLETIC ASSOCIATION (Section VIII)**
**EQUAL PROTECTION VIOLATION, 14TH AMENDMENT 42 U.S.C. §1983**

68.    Plaintiffs repeat, reiterates and religious each and every allegation contained in Paragraphs "1" through "67" of this Complaint, inclusive, with the same full force and effect as if fully set forth herein.

69.    Defendants WANTAGH UNION FREE SCHOOL DISTRICT (hereinafter "WUFSD"), LYNBROOK UNION FREE SCHOOL DISTRICT (hereinafter "LUFSD") and NASSAU COUNTY PUBLIC HIGH SCHOOL ATHLETE ASSOCIATION (SECTION VIII) (hereinafter "NCPHSAA") failed to address Plaintiff's complaints of discriminatory, and racist treatment by individuals on their premises in attendance at games held at their schools.

70.    All relevant actions taken by Defendants and those with delegated authority to act on their behalf were taken under color of law.

71.    Defendants have engaged in an intentional and systematic policy, pattern, and/or practice of discrimination against Plaintiff and the Class in violation of the Equal Protection Clause through their unwillingness and failure to address Plaintiff's complaints of discriminatory, and racist treatment by individuals on their premises in attendance at games held at their schools., including by, among other things:

(a)    Adopting the abusive, vocative, discriminatory and race based actions of their student,

spectators, staff and allowing and creating an culture and atmosphere that had and was known to have a disparate and disproportionate impact on Plaintiffs which was on the basis of race and color; and

(b)    And failing to follow their on rules and regulations to prevent, address and combat those racist and discriminatory actions, statements and conspiracies which were aimed at and intended to harm Plaintiffs on the basis of race and color.

72.    Defendants WUFSD, LUFSD, and NCPHSAA, were required under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to provide reasonable safety and care of students in their control and custody, including but not limited to infant Plaintiffs.

73.    While attending basket ball games at each Defendants' schools, Plaintiffs were threatened, called racial slurs such as "Nigger"; "Whose your daddy?"; "Where's your daddy?". The crowd stormed the basketball court, and "bum-rushed the team."

74.    Although aware of the discriminatory treatment of Plaintiffs, Defendants WUFSD, LUFSD, and NCPHSAA failed to take appropriate action against those individuals who behaved in this vile manor.

75.    At all times relevant to the claims in this matter Defendants WUFSD, LUFSD, and NCPHSAA as state actors, had a duty to protect infant Plaintiffs and provide an environment of care and safety in which to attend a  public school function, without fear to attend a sporting event.

76.    As a result of the above negligence and the consequent harm suffered by the

infant Plaintiffs, Plaintiffs seek compensatory damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS, and any other such relief as this Court may deem appropriate.

## AS AND FOR COUNT TWO
## AGAINST DEFENDANTS WANTAGH UNION FREE SCHOOL DISTRICT (hereinafter "WUFSD"), LYNBROOK UNION FREE SCHOOL DISTRICT (hereinafter "LUFSD") and NASSAU COUNTY PUBLIC HIGH SCHOOL ATHLETE ASSOCIATION (SECTION VIII) (hereinafter "NCPHSAA")
## 42 U.S.C. §1985

77.     Plaintiff repeats, reiterates and religious each and every allegation contained in Paragraphs "1" through 76" the Complaint, inclusive, with the same full force and effect as if fully set forth herein.

78.     The defendants, WANTAGH UNION FREE SCHOOL DISTRICT (hereinafter "WUFSD"), LYNBROOK UNION FREE SCHOOL DISTRICT (hereinafter "LUFSD") and NASSAU COUNTY PUBLIC HIGH SCHOOL ATHLETE ASSOCIATION (SECTION VIII) (hereinafter "NCPHSAA") , visited unwanted, offensive and harmful abuse and race based actions against Plaintiffs and did so through agreements of their students and with the knowledge of their administrators and supervisors and allowed same to occurs knowing that was intended to cause harm to Plaintiffs, and was done because and on account of the race of Plaintiffs.

79.     Upon information and belief the actions taken at the Wantagh game by the persons who turned their backs, cursed and used racial slurs was coordinated by and between members of the Lynbrook school district and the Wantagh school district.

80.    Defendants, students, spectators from WANTAGH UNION FREE SCHOOL DISTRICT (hereinafter "WUFSD"), LYNBROOK UNION FREE SCHOOL DISTRICT (hereinafter "LUFSD")did refer to Plaintiffs as a "nigger" and other racially derogatory names while agreeing to and then carrying out actions demonstrating hatred, disrespect and disregard for Plaintiffs.  Said acts were motivated by race and were marked by the overt statements and actions Defendants to support the motivation.   NCPHSAA, agreed to allow this to happen and even in the face of the wrongful acts failed to take actions that would address the known conspiracy that was taking place, thereby fostering the wrongful actions which were planned and did occur.

81.  The Plaintiffs did not in any way provoke or instigate such an attack, and did not create any threat of harm to the defendants, who acted in concert and conspiracy to commit this violation of the rights of Plaintiffs.   Defendants were acting intentionally and with indifference to the harm and injury which would be cause to Plaintiffs.

82.  As a direct and proximate cause  of the aforesaid defendants' actions, agreements, abusive treatment and conspiracy Plaintiffs did suffer serious embarrassment, intimidation, emotional injuries, psychological distress, pain and suffering, violation of rights and other permanent injuries not yet fully ascertained.

83.    As a result of the above negligence and the consequent harm suffered by the infant Plaintiffs, Plaintiffs seek compensatory damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS, and any other such relief as this Court may deem appropriate.

## AS AND FOR COUNT THREE
## AGAINST DEFENDANTS WANTAGH UNION FREE SCHOOL DISTRICT,
## LYNBROOK UNION FREE SCHOOL DISTRICT and NASSAU COUNTY PUBLIC
## HIGH SCHOOL ATHLETIC ASSOCIATION (Section VIII)
## <u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>

84.     Plaintiffs repeat, reiterates and religious each and every allegation contained in Paragraphs "1" through "83" of this Complaint, inclusive, with the same full force and effect as if fully set forth herein.

85.     The Defendants WUFSD, LUFSD, and NCPHSAA (Section VIII) should have known that their conduct of ( I ) failing to protect the infant Plaintiffs from racial attacks (ii) refusing to take disciplinary action after being informed that the infant Plaintiffs were subjected to verbal racial slurs, and assaulted by students, and (iii) taking no measures to protect the infant Plaintiffs from further attacks, and (iv) failing to address the racial motivation that was apparent in the aforesaid "assault," constituted extreme and outrageous conduct, beyond the bounds of decency within a civilized society.

86.     The Defendants WUFSD, LUFSD, and NCPHSAA (Section VIII) knew or should have known that their conduct would cause extreme emotional distress to the infant Plaintiffs, Yet, Defendants continued with their course of conduct, and failed to remedy the extreme emotional distress that they knew and/or should have known was being visited upon the Plaintiffs.

87.     As a result of the aforesaid outrageous conduct by the Defendants, the Plaintiffs, and each individually, and collectively suffered extreme emotional distress, psychological injuries, and physical symptoms, pain and suffering, resulting from the emotional distress that

they endured at the hands of the defendants

88.     As a result of the above negligence and the consequent harm suffered by the infant Plaintiffs. Plaintiffs seeks compensatory damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS, and any other such relief as this Court may deem appropriate

### AS AND FOR A THIRD CAUSE OF ACTION
### Violations under New York State Civil Rights Law § 40
### (As against All Defendants Individually and Collectively)

89.     The Plaintiff repeats, reiterates and religious each and every allegation contained in paragraphs 1 through 88 of this Complaint with the same force and effect as though fully set forth herein.

90.     Upon the filing of this complaint a copy is being provided to the office of NYS Attorney General with a request for that office to take action against Defendant.

91.     The New York State Civil Rights Law § 40-c which outlaws discriminatory practices in places of public accommodation, states in relevant part:

1. All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.

2. No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation, gender identity or expression, or disability, as such term is defined in section two hundred ninety-two of the executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision of the state.

92.     On February 15, 2023 during a post season playoff basketball game at Lynbrook High School between Roosevelt High School Boys Basketball Team and Lynbrook High School

Boys Basketball Team, a disturbance occurred.    Spectators along with people in the bleachers inside the gymnasium of Lynbrook High School were spitting on, barking at, and chanting racial names including but not limited to the word "nigger" at cheerleaders of Roosevelt High School.

93.    While this behavior by spectators and people in the bleachers was happening, onlookers to these improper and heinous acts, which included supervisory personnel from Lynbrook High School did not intervene until staff from Roosevelt High School stressed to the Lynbrook Athletic Director that the matter be dealt with.

94.    To the contrary, with the exception of the expulsion of certain students from the premises, repercussions have not been taken to address and prevent this level of abuse and complete lack of "sportspersonship".

95.    The racial comments and actions of Spectators and people in the bleachers endured by cheerleaders of Roosevelt High School were racist, demeaning, degrading, and intended to intimidate and dehumanize the students from Roosevelt High School .

96.    Following the incident that occurred at Lynbrook High School on February 15, 2023, the students of Roosevelt High School were again subjected to improper and racially charged heinous acts.

97.    On February 17, 2023, at Wantagh High School, the Roosevelt High School Boys Basketball Team was competing in the second round post season playoff athletic competition.

98.    When the players from Roosevelt Boys Basketball Team were introduced, a large group of young white men dressed in white t-shirts and sweat-shirts stood up in the bleachers, and started booing and, physically turned their backs to the basketball court as a sign of

disregard and disrespect., intimidating, making comments intending to demean Plaintiffs on account of their race and color and otherwise physically creating fear of danger all of which was directed toward Plaintiffs because of their race and color.

99.     Defendants knew Plaintiffs' race and color and were aware or should have been aware of Plaintiff's intent to enter into fully participation in all aspects of the activities at the premises controlled by Defendants and to receive the equal, fair and non-discriminatory treatment and be treated equally and provided equal opportunity as Caucasian persons.

100.    Plaintiff was denied full and equal accommodations, advantages, facilities and privileges as provided by Defendants to others other then Plaintiffs.

101.    As a consequence of Defendants' wrongful actions, callous indifference, negligent behavior and violation of state and federal laws, Plaintiffs were intimidated, abused and prevented from receiving equal accommodations as provided to Caucasian persons and was prevented from engaging in transactions and business on equal terms as Caucasian persons. Instead Plaintiffs were subjected to abuse, threats, mental anguish, great fear, embarrassment, personal humiliation, degradation and loss of the opportunity to engage in the ability to engage in the sporting and other activities free of abuse, mistreatment and threats related to their race and color. All of these rights are secured to Plaintiff under New York State Civil Rights Law § 40.

102.    By reason of the foregoing, the Plaintiff has incurred damages in the sum in excess of $2,000,000.00, plus punitive damages, costs, and attorney fees.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Violations under New York State Executive Law - Human Rights Law § 296
### (As against All Defendants Individually and Collectively)

103.    The Plaintiff repeats, reiterates and religious each and every allegation contained in paragraphs 1 through 102 of this Second Amended Complaint with the same force and effect as though fully set forth herein.

104.    The New York State Executive Law § 296 which outlaws discriminatory practices in places of public accommodation, states in relevant part:

> 2. (a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability, marital status, or status as a victim of domestic violence, of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.

105.    On February 15, 2023 during a post season playoff basketball game at Lynbrook High School between Roosevelt High School Boys Basketball Team and Lynbrook High School Boys Basketball Team, a disturbance occurred.    Spectators along with people in the bleachers inside the gymnasium of Lynbrook High School were spitting on, barking at, and chanting racial names including but not limited to the word "nigger" at cheerleaders of Roosevelt High

School.

106.    While this behavior by spectators and people in the bleachers was happening, onlookers to these improper and heinous acts, which included supervisory personnel from Lynbrook High School did not intervene until staff from Roosevelt High School stressed to the Lynbrook Athletic Director that the matter be dealt with.

107.    To the contrary, with the exception of the expulsion of certain students from the premises, repercussions have not been taken to address and prevent this level of abuse and complete lack of "sportspersonship".

108.    The racial comments and actions of Spectators and people in the bleachers endured by cheerleaders of Roosevelt High School were racist, demeaning, degrading, and intended to intimidate and dehumanize the students from Roosevelt High School .

109.    Following the incident that occurred at Lynbrook High School on February 15, 2023, the students of Roosevelt High School were again subjected to improper and racially charged heinous acts.

110.    On February 17, 2023, at Wantagh High School, the Roosevelt High School Boys Basketball Team was competing in the second round post season playoff athletic competition.

111.    When the players from Roosevelt Boys Basketball Team were introduced, a large group of young white men dressed in white t-shirts and sweat-shirts stood up in the bleachers, and started booing and, physically turned their backs to the basketball court as a sign of disregard and disrespect., intimidating, making comments intending to demean Plaintiffs on account of their race and color and otherwise physically creating fear of danger all of which was directed toward Plaintiffs because of their race and color.

112.    Defendants knew Plaintiffs' race and color and were aware or should have been aware of Plaintiff's intent to enter into fully participation in all aspects of the activities at the premises controlled by Defendants and to receive the equal, fair and non-discriminatory treatment and be treated equally and provided equal opportunity as Caucasian persons.

113.    Plaintiff was denied full and equal accommodations, advantages, facilities and privileges as provided by Defendants to others other then Plaintiffs.

114.    As a consequence of Defendants' wrongful actions, callous indifference, negligent behavior and violation of state and federal laws, Plaintiffs were intimidated, abused and prevented from receiving equal accommodations as provided to Caucasian persons and was prevented from engaging in transactions and business on equal terms as Caucasian persons. Instead Plaintiffs were subjected to abuse, threats, mental anguish, great fear, embarrassment, personal humiliation, degradation and loss of the opportunity to engage in the ability to engage in the sporting and other activities free of abuse, mistreatment and threats related to their race and color.  All of these rights are secured to Plaintiff under New York State Human Rights Law § 296.

115.    By reason of the foregoing, the Plaintiff has incurred damages in the sum in excess of $2,000,000.00, plus punitive damages, costs, and attorney fees.

**AS AND FOR A FIFTH COUNT**
**AGAINST DEFENDANTS WANTAGH UNION FREE SCHOOL DISTRICT,**
**LYNBROOK UNION FREE SCHOOL DISTRICT and NASSAU COUNTY PUBLIC**
**HIGH SCHOOL ATHLETIC ASSOCIATION (Section VIII)**
**NEGLIGENCE/GROSS NEGLIGENCE**

116.    Plaintiffs repeats, reiterates and religious each and every allegation contained in Paragraphs "1" through "115" of the Complaint, inclusive, with the same full force and effect

as if fully set forth herein.

117.    During the time of the verbal and physical assaults upon Plaintiffs, Defendants WUFSD, LUFSD, and NCPUSAS (Section VIII) had a special duty of care, to ensure the protection and safety of the infant Plaintiffs/Students, and to protect them from foreseeable harm by other students.

118.    The Defendants, WUFSD, LUFSD, and NCPUSAS (Section VIII) had a reckless and negligent disregard for Plaintiffs, failed to properly supervise their students, failed to properly train teachers and staff as to methods of supervision, and thus provided the opportunity for the Defendants' assailants to attack the Plaintiffs.

119.    Defendants WUFSD, LUFSD, and NCPUSAS (Section VIII) further breached their duty of care to the infant Plaintiffs, by recklessly failing to provide proper and sufficient security measures throughout their schools, and by failing to place security and/or teachers in areas where students would be most vulnerable to a foreseeable harassment, attack, or violent assault.

120.    Defendants WUFSD, LUFSD, and NCPUSAS (Section VIII) created a dangerous condition of property, by permitting violent students whom the school knew and/or should have known had violent, and discriminatory propensities towards students of color including the infant Plaintiffs herein.

121.    The Defendants, WUFSD, LUFSD, and NCPUSAS (Section VIII) could reasonably foresee that their breach of a duty of care to protect the infant Plaintiffs would result in their harm.

122.    As a direct and proximate cause  of the aforesaid Defendants' breach of their duty of care to the infant Plaintiffs, said Plaintiffs did suffer  serious emotional injuries, psychological distress.

123.    As a result of the above negligence and the consequent harm  suffered by infant Plaintiffs, Plaintiff seeks compensatory damages in the amount of TWO MILLION ($2,000,000.00) DOLLARS, and any other such relief as this Court may deem appropriate.


## AS AND FOR A SIXTH COUNT:
## NYS HUMAN RIGHTS LAW, N.Y. EXECUTIVE LAW § 296
### (Disparate Impact)

124.    Plaintiffs repeats, reiterates and  religious each and every allegation contained in Paragraphs "1" through "123" of the Complaint, inclusive, with the same full force and effect as if fully set forth herein.

125.    Plaintiff and the Class plead, in the alternative, that Defendants are liable for discrimination under the NYSHRL based on a disparate impact theory of liability.

126.    Defendants' use of the existing hiring policies and procedures has had an adverse impact on Plaintiffs

127.    As a direct result of Defendants' discriminatory policies and/or practices as described above, Plaintiff and the Class have suffered damages including, but not limited to, emotional and mental distress and loss of self worth, embarrassment, humiliation and other damages not yet fully ascertained.

128.    The foregoing policies, pattern, and/or practices have had an unlawful disparate

impact on non-white applicants in violation of the NYSHRL.

129.    Plaintiff and the Class request relief as hereinafter described.

## PRAYER FOR RELIEF

WHEREFORE, the following relief is requested:

1.    Certification of the case as a class action on behalf of the proposed Class;

2.    Designation of Plaintiffs Students 1 through 5 as representative of the Class;

3    Designation of Representative Plaintiff's counsel of record as Class Counsel;.

4    A declaratory judgment that the practices complained of herein are unlawful and violate the Equal Protection Clause and the NYSHRL and other New York State Laws;

5    A declaratory judgment that Defendants' discriminated against Plaintiffs and Class Members based on race and color;

6    A preliminary and permanent injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in policies, patterns, and/or practices that discriminate against Plaintiffs or Class Members based on their race and color or participation in this lawsuit;
"
7    An order that Defendants institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees regardless of race and color and that they eradicate the effects of their past and present unlawful racial practices;

8    An order requiring Defendants to develop and institute objective and validated standards for addressing incidents of race and color based discrimination that will educate and instruct their students, spectators, staff and others that do not have a disparate impact on applicants on the basis of race and color;

9    An order appointing a monitor to ensure that Defendants comply with the injunction provisions of any decree ordered by the Court;

10    An order retaining jurisdiction over this action to ensure that Defendants comply with such a decree;

11    All damages sustained as a result of Defendants' conduct, including damages for

emotional distress, humiliation, embarrassment, and anguish, according to proof;

12      Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

13      Pre-judgment and post-judgment interest, as provided by law; and

14      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

JURY DEMAND

167.    Jury trial is requested on all matters triable to a jury.

Dated: Hempstead, New York
        May 15, 2024

Respectfully Submitted,

THE LAW OFFICES OF
FREDERICK K. BREWINGTON

By:     *Frederick K. Brewington*
        FREDERICK K. BREWINGTON
        Attorney for Plaintiffs
        556 Peninsula Boulevard
        Hempstead, New York 11550
        516.489.6959