UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DR. DEBORAH L. WORTHAM, Superintendent of the
Roosevelt Union Free School District; ROSE
GIETSCHIER, President of the Roosevelt Union Free
School District Board of Education; THE BOARD OF
EDUCATION OF THE ROOSEVELT UNION FREE
SCHOOL DISTRICT; ROOSEVELT UNION FREE
SCHOOL DISTRICT; and STUDENTS 1-5 for
themselves and class representatives; for themselves and
for itself on behalf of its students (John and Jane Does 1-
60 being student victims whose names are withheld for
privacy purposes), staff and community,

            Plaintiffs,

     -against-

WANTAGH UNION FREE SCHOOL DISTRICT;
LYNBROOK UNION FREE SCHOOL DISTRICT;
and NASSAU COUNTY PUBLIC HIGH SCHOOL
ATHLETIC ASSOCIATION (SECTION VIII),

            Defendants.
------------------------------------------------------------------------X

For Online Publication Only

**FILED**
**CLERK**

3/30/2026 11:18 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**<u>MEMORANDUM & ORDER</u>**
24-cv-3553 (JMA) (SIL)

**AZRACK, United States District Judge:**

  This case concerns racially charged misconduct at two high school basketball games. The first game took place on February 15, 2023 at Lynbrook High School and the second took place on February 17, 2023 at Wantagh High School. At both games, students from the "away" team, Roosevelt High School, were booed, spit at, taunted with racial slurs, and otherwise disrespected by spectators and players associated with the "home" teams.

  On May 16, 2024, Plaintiffs Roosevelt Union Free School District ("Roosevelt"); Board of Education of the Roosevelt Union Free School District ("Roosevelt BOE"); Deborah Wortham; Rose Gietschier; and five unnamed individual students filed this action against Defendants Wantagh Union Free School District ("Wantagh"); Lynbrook Union Free School District ("Lynbrook"); and Nassau County Public High School Athletic Association (Section VIII)

("Section VIII"),[1] alleging violations of 42 U.S.C. § 1983 and § 1985, as well as several state law claims.[2]  (See ECF No. 8 ("Am. Compl.").)  Plaintiffs seek at least $2,000,000 in compensatory damages, as well as declaratory and injunctive relief.  (Id. at 28–29.)  Plaintiffs intend to seek class certification, with the unnamed student plaintiffs designated as class representatives.  (Id.)  Before the Court are three motions to dismiss, one filed by each Defendant.  (ECF No. 29 ("Lynbrook Mot."); ECF No. 30 ("Section VIII Mot."); ECF No. 31 ("Wantagh Mot.").)

For the reasons set forth below, the motions to dismiss are granted and Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE.

## I.    BACKGROUND

### A. Facts

#### 1. Parties

Plaintiff Roosevelt and Defendants Lynbrook and Wantagh are all public high schools located in Nassau County, New York.  (Am. Compl. ¶¶ 9, 15–16.)  Roosevelt's student population consists predominantly of students of color.  (See id. ¶ 21.)

Plaintiff Deborah Wortham is the Superintendent of Roosevelt.  (Id. ¶ 10.)  Plaintiff Rose Gietschier is the President of Plaintiff Roosevelt BOE.  (Id. ¶¶ 11–12.)

Section VIII is a municipal entity that oversees interscholastic athletic events in Nassau County.  (Id. ¶¶ 17–18.)

---

[1] Defendant Section VIII notes that it is improperly named in the Amended Complaint.  (ECF No. 30 at 1 n.1.)  Section VIII is the Nassau County section of the New York State Public High School Athletic Association.  (Id. at 2–3.)  For purposes of this opinion, the Court will simply refer to Defendant as Section VIII.

[2] The opening paragraphs of the Amended Complaint also mention in passing 42 U.S.C. § 1988 and the First Amendment.  (See ECF No. 8 ¶¶ 4–5.)  However, the Amended Complaint does not plead any such claims, nor do the Plaintiffs' briefs in opposition to the instant motions mention them.  (See id.; ECF No. 29-4; ECF No. 30-5, ECF No. 31-4.)  Accordingly, any claim under 42 U.S.C. § 1988 or the First Amendment is forfeited.  See Walker v. New York State Dep't of Health, 788 F. Supp. 3d 427, 503 (E.D.N.Y. 2025) ("When a party refers to an issue 'only in a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived[]—or, more precisely, forfeited.'") (quoting In re Demetriades, 58 F.4th 37, 54 (2d Cir. 2023)).

2

**2.  February 15, 2023 Playoff Game at Lynbrook**

On February 15, 2023, the Roosevelt and Lynbrook boys' basketball teams competed in a playoff game at Lynbrook.  (Id. ¶ 22.)  During that game, spectators "were spitting on, barking at, and chanting racial names including but not limited to [the n-word] at cheerleaders of Roosevelt High School."  (Id.)

The Amended Complaint alleges that "supervisory personnel from Lynbrook High School did not intervene until staff from Roosevelt High School stressed to the Lynbrook Athletic Director that the matter be dealt with," (id. ¶ 23), and that, "with the exception of the expulsion of certain students from the premises, repercussions have not been taken to address and prevent this level of abuse[,]" (id. ¶ 24).  However, the Amended Complaint mentions that some Lynbrook students were suspended after these events.  (Id. ¶ 49.)

**3.  February 17, 2023 Playoff Game at Wantagh**

On February 17, 2023, the Roosevelt and Wantagh boys' basketball teams competed in a playoff game at Wantagh.  (Id. ¶ 27.)  When the Roosevelt team was introduced, "a large group of young white men dressed in white t-shirts and sweat-shirts" stood up in the bleachers, booed at the Roosevelt team, and "physically turned their backs to the basketball court as a sign of disregard and disrespect."  (Id. ¶ 28.)  People also booed at the Roosevelt cheerleaders and shouted insults and slurs at them, including the n-word and the phrase "[w]ho's your daddy."  (Id. ¶ 29.)  Players and spectators "regularly" used the n-word directed at the Roosevelt students.  (Id. ¶ 30.)  At the end of the game, the group dressed in white "rushed the playing court and prevented the traditional hand shaking between the two teams" and "created a mob like environment that was uncontrolled and became a safety concern" for the Roosevelt team and staff.  (Id. ¶¶ 35–37).  The Amended Complaint alleges that "[t]he large group of young white men . . . consisted of students from both Lynbrook High School and Wantagh High School in a collaboration aimed to intimidate, threaten,

3

demean, and disrespect the Roosevelt students based on race and color." (Id. ¶ 38.) As a result of this behavior, Roosevelt students felt "intimidated," "harassed," "unsafe," and "a different type of hatefulness[.]" (Id. ¶ 42.)

Wantagh officials, supervisors, and staff did not intervene in, stop, or otherwise address this behavior. (Id. ¶¶ 30, 32–33.) Section VIII did not "take preemptive acts or any form of intervention to prevent or stop or curtail the ongoing abuse[.]" (Id. ¶ 31.)

Plaintiffs allege that "[t]he wrongful actions have a historical base as same have been ongoing for a period of time," although they do not provide any examples other than the two basketball games described above. (Id. ¶ 43.) Plaintiffs further allege that Defendants' failure to intervene in or otherwise prevent or address the conduct at the two games amount to "common, uniform, unfair, and discriminatory policies and practices." (Id. ¶ 67.)

## B. **Procedural History**

On October 4, 2024, Plaintiffs filed an Amended Complaint alleging violations of 42 U.S.C. § 1983 and § 1985, as well as various state law violations. Plaintiffs' § 1983 claim alleges that all Defendants' failure to address Plaintiffs' complaints of discriminatory treatment at the Lynbrook and Wantagh games amounts to a "an intentional and systematic policy, pattern, and/or practice of discrimination" in violation of the Fourteenth Amendment's Equal Protection Clause. (Id. ¶¶ 68–76). [3] Plaintiffs' § 1985 claim alleges that all Defendants conspired to inflict "unwanted, offensive and harmful abuse and race based actions against Plaintiffs . . . through agreements of their students and with the knowledge of their administrators and supervisors[,]" and that Section

---

[3] As part of Plaintiffs' recitation of their disparate impact claim under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296, Plaintiffs include some allegations that appear completely unrelated to this lawsuit. (See Am. Compl. ¶ 126 ("Defendants' use of the existing hiring policies and procedures has had an adverse impact on Plaintiffs."); id. ¶ 128 ("The foregoing policies, pattern, and/or practices have had an unlawful disparate impact on non-white applicants in violation of the NYSHRL.").)

VIII "agreed to allow this to happen and even in the face of the wrongful acts failed to take actions that would address the known conspiracy that was taking place[.]"  (Id. ¶¶ 77–83.)

On August 25, 2025, Defendants Lynbrook, Section VIII, and Wantagh each filed a motion to dismiss the Amended Complaint.  (ECF No. 29 ("Lynbrook Mot."); ECF No. 30 ("Section VIII Mot.); ECF No. 31 ("Wantagh Mot.").)

## II.      DISCUSSION

### A.  Standing

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In considering a motion to dismiss under Rule 12(b)(1), "the district court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the party asserting jurisdiction."  Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014); see also Carter v. HealthPort Technologies, LLC, 822 F.3d 47, 56–57 (2d Cir. 2016) (explaining that a plaintiff bears the burden of plausibly alleging sufficient facts to establish that he or she has standing to sue).

"An objection to standing is properly made on a Rule 12(b)(1) motion."  Tasini v. N.Y. Times Co., 184 F. Supp. 2d 350, 354–55 (S.D.N.Y. 2002) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88–89 (1998)).  "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  "When, as here, there are multiple plaintiffs, only one plaintiff need possess the requisite standing for a suit to go forward."  New York v. United States Dep't of Agric., 454 F. Supp. 3d 297, 303 (S.D.N.Y. 2020).  However, "[s]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]"  TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021).

5

To establish standing, a plaintiff must show "(i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." FDA v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024). "The injury-in-fact element requires that the plaintiff be 'the proper party to bring this suit.'" Carter, 822 F.3d at 55 (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)). Accordingly, the plaintiff bears the burden of establishing "that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Id.

The Court takes very seriously the racial epithets shouted at the two games. However, the Amended Complaint fails to allege that any of the individual Plaintiffs in this case were among those targeted by racial abuse or otherwise suffered a concrete and particularized injury cognizable under either 42 U.S.C. § 1983 or § 1985. And the organizational Plaintiffs have failed to allege any injury to them as organizations. Accordingly, the Court lacks subject matter jurisdiction and must dismiss Plaintiffs' federal claims for lack of standing.

### 1. Students 1–5

"[A] class action cannot be sustained without a named plaintiff who has standing." Amador v. Andrews, 655 F.3d 89, 99 (2d Cir. 2011); see also Spokeo, 578 U.S. at 338 n.6 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.") (cleaned up). "[U]ntil certification, the jurisdiction of the district court depends upon its having jurisdiction over the claim of the named plaintiffs when the suit is filed and continuously thereafter until

6

certification[.]"  Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 112 n.22 (2d Cir. 2013) (quoting Morlan v. Universal Guar. Life Ins. Co., 298 F.3d 609, 616 (7th Cir. 2002)).

The Amended Complaint fails to identify, even pseudonymously, any purported class representative who was injured in "a personal and individual way[.]"  Spokeo, 578 U.S. at 339.  The Amended Complaint confusingly alleges that Plaintiffs "Students 1 through 5" are "students and residents of the Roosevelt School District and representatives of John and Jane Does 1-60 student victims, are students, staff and community members, and are, residents of Roosevelt School District."  (Am. Compl. ¶ 14.)  The Amended Complaint does not allege that Students 1 through 5 are Roosevelt cheerleaders or basketball players or even that they were present at the basketball games at issue.  Indeed, the Amended Complaint mentions the student Plaintiffs only once, when introducing a list of seven statements from anonymous Roosevelt students, allegedly "including prospective Class members and representatives[.]"  (Id. ¶ 42.)  These statements relate only to the Wantagh incident and, while some allege personal emotional harm, others merely describe the incident.  (See id.)  Moreover, it is impossible to tell which of these statements were made by Students 1 through 5.  Without more, the Court cannot assess whether any specific putative class representative was actually injured by Defendants' alleged conduct at either basketball game.  See, e.g., Ziboukh v. Whaleco, Inc., 795 F. Supp. 3d 349, 371–74 (E.D.N.Y. 2025) (dismissing data privacy claims brought by putative class because the complaint made only generalized allegations of harm to class members and never alleged that plaintiffs' data was in fact collected by defendants); Johns v. Do, No. 23-cv-3497, 2024 WL 4171023, at *4 (E.D.N.Y. Sept. 12, 2024) (dismissing purported class challenge to excessive fines because named plaintiffs did "not actually allege" that they were subject to the challenged fines).  Students 1 through 5 lack

standing because they did not allege any information about who they are, where they were, or whether they personally suffered a legally cognizable injury-in-fact.

### 2. Roosevelt and Roosevelt BOE

Generally, an organization "may have standing in one of two ways: by establishing so-called 'associational' or 'representational' standing to sue on behalf of its members, or by establishing that it was directly injured as an organization." Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021).

Associational standing is established on behalf of a membership organization when: "(a) [the organization's] members would otherwise have standing to sue in their own right; (b) the interests [the organization] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343 (1977). If the plaintiff organization is not a membership organization, it may still establish associational standing when it "function[s] effectively as a membership organization[.]" Disability Advocs., Inc. v. N.Y. Coal. for Quality Assisted Living, Inc., 675 F.3d 149, 157 (2d Cir. 2012); For example, in Hunt, the Supreme Court held that the constituency of an organization had sufficient "indicia of membership" when the constituency had exclusive control over the organization's leadership, finances, and activities. 432 U.S. at 344–45.

The Second Circuit does not permit associational standing for claims brought pursuant to § 1983. See Conn. Citizens Def. League, Inc. v. Lamont, 6 F.4th 439, 447 (2d Cir. 2021) (citing Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011)); A.H. by E.H. v. New York State Dep't of Health, 147 F.4th 270, 278 n.2 (2d Cir. 2025). Accordingly, an organization may only bring a § 1983 claim if the organization "can independently satisfy the requirements of Article III standing." Conn. Citizens Def. League, Inc., 6 F.4th at 447; see also Nat'l Rifle Assoc. of Am. v.

Hochul, No. 20-3187, 2021 WL 5313713, at *2 (2d Cir. Nov. 16. 2021) ("The [Complaint] alleges only injuries to the NRA's members.  We have held, however, that organizations suing under Section 1983 must, without relying on their members' injuries, assert that their own injuries are sufficient to satisfy Article III's standing requirements.") (internal citations omitted).

Organizational standing requires that an organizational plaintiff plead facts sufficient to establish "(i) an imminent 'injury in fact' to itself as an organization (rather than to its members) that is 'distinct and palpable'; (ii) that its injury is 'fairly traceable' to [defendants' conduct]; and (iii) that a favorable decision would redress its injuries."  Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 109 (2d Cir. 2017) (quoting Nnebe, 644 F. 3d at 156).  "[A]n organization establishes an injury-in-fact if it can show that it was 'perceptibly impaired' by defendant's actions."  Id. at 110 (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982)); see also Conn. Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC, No. 23-1118, 2026 WL 478967, at *7 (2d Cir. Feb. 20, 2026) ("[T]he organization must show that it was directly injured as an organization.") (internal citation omitted).  "[W]here, as here, an organization is not directly regulated by a challenged law or regulation, it cannot establish 'perceptible impairment' absent an involuntary material burden on its established core activities."  Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 173 (2d Cir. 2021); see also Citizens United to Protect Our Neighborhoods v. Vill. of Chestnut Ridge, New York, 98 F.4th 386, 396 (2d Cir. 2024) (holding that an organization failed to establish standing where the complaint alleged no facts concerning its "regularly conducted activities and how those activities were necessarily and materially affected" by the challenged conduct).

Roosevelt and Roosevelt BOE argue that they have alleged standing to bring claims "on behalf of their students[.]"  (ECF 29-4 at 3; ECF No. 30-5 at 8; ECF No. 31-4 at 6.)  The Court disagrees.  As to Plaintiffs' § 1983 claims, this theory of standing is foreclosed by Second Circuit

9

precedent, which makes clear that membership organizations cannot bring § 1983 claims on behalf of their members. See Conn. Citizens Def. League, 6 F.4th at 447; Nnebe, 644 F.3d at 156; Nat'l Rifle Assoc. of Am., 2021 WL 5313713, at *2. Additionally, Plaintiffs appear to ask the Court to break new ground on associational standing by asserting that a school district or board of education may be considered a membership organization. Plaintiffs cite no case law holding that a school district has associational standing to sue on behalf of its students. Nor have Plaintiffs cited any other relevant authority in support of this theory of associational standing. Moreover, Roosevelt and Roosevelt BOE have neither alleged nor argued that students in their district bear the "indicia of membership" described by the Supreme Court in Hunt, such as control over the organizations' leadership, budget, or decision-making. 432 U.S. at 344–45. Accordingly, the Court concludes that Roosevelt and Roosevelt BOE have not plausibly alleged that they have associational standing to sue on behalf of their students. See Carter, 822 F.3d at 56.

Roosevelt and Roosevelt BOE separately argue that they have organizational standing because "the administration suffered the same intimidation and abuse as the students," which they argue constitutes a "distinct and palpable injury in fact" to Roosevelt and Roosevelt BOE as organizations. (ECF No. 29-4 at 4; ECF No. 30-5 at 8; ECF No. 31-4 at 6.) In support of this argument, Plaintiffs cite paragraphs 52 through 57 of the Amended Complaint, which describe subsequent actions taken by Roosevelt staff and administrators to address the Lynbrook and Wantagh incidents, such as testifying at a 50-h hearing, (Am. Compl. ¶¶ 52, 56); conducting a Human Resources investigation, (id. ¶¶ 53–54); and meeting with coaches, supervisors, and administrators from Wantagh, (id. ¶¶ 53–55). None of these factual allegations support Plaintiffs' claims that the "the administration suffered the same intimidation and abuse as the students" or

10

that such abuse could constitute a legally cognizable injury to Roosevelt and Roosevelt BOE as organizations. (ECF No. 29-4 at 4; ECF No. 30-5 at 8; ECF No. 31-4 at 6.)[4]

### 3. Wortham and Gietschier

Individual plaintiffs Dr. Deborah Wortham and Rose Gietschier also lack standing for many of the same reasons articulated supra. Neither of these individuals was present at the Lynbrook or Wantagh basketball games, (see Am. Compl. ¶¶ 46, 50), and neither is alleged to have personally suffered any injury. The only factual allegations that pertain to Dr. Wortham in the Amended Complaint describe her appearance at a 50-h hearing, where she testified to having second-hand knowledge of the events at Lynbrook and Wantagh. (See Am. Compl. ¶¶ 44–56.) Meanwhile, the Amended Complaint never again mentions Gietscher after introducing her as the President of Roosevelt BOE, apart from one conclusory allegation that she would adequately represent the proposed class. (See Am. Compl. ¶¶ 11, 64.) These allegations are clearly insufficient to establish standing on behalf of either Wortham or Gietschier.[5]

No Plaintiff in this case has plausibly alleged sufficient facts to establish that they have standing to pursue claims under 42 U.S.C. § 1983 or § 1985. Accordingly, Plaintiffs' federal claims are dismissed for lack of subject matter jurisdiction.

---

[4] The Court notes that Plaintiffs' § 1983 and § 1985 claims are both predicated on a violation of the Equal Protection Clause. This raises an additional problem with Plaintiffs' theory of organizational standing, as "neither School District[] Plaintiff[] nor School Board Plaintiff[] are 'persons' under the Fourteenth Amendment." Massapequa Union Free Sch. Dist. v. New York State Bd. of Regents, No. 23-cv-7052, 2025 WL 929710, at *8–9 (E.D.N.Y. Mar. 27, 2025). Accordingly, both Roosevelt and Roosevelt BOE lack capacity to assert their own substantive rights under the Equal Protection Clause. Cf. Blakeman v. James, No. 24-cv-1655, 2024 WL 3201671, at *15 & n.18 (E.D.N.Y. Apr. 4, 2024) (explaining that, while standing and capacity to sue are distinct concepts, Second Circuit precedent dictates that a municipality does not have standing to sue its state under the Fourteenth Amendment because it is a "political subdivision" of the state) (quoting Tweed-New Haven Airport Auth. v. Tong, 930 F.3d 65, 73 n.7 (2d Cir. 2019)); City of New York v. State, 86 N.Y.2d 286, 289–90 (1995) (concluding that "municipal corporate bodies—counties, towns and school districts" lack capacity to sue their parent state). The parties did not brief this issue and the Court's decision does not rest on this body of law, as the Court has already concluded that Roosevelt and Roosevelt BOE lack organizational standing.

[5] The caption of the Amended Complaint appears to contemplate that Wortham and Gietschier can sue in their official capacities as the Roosevelt Superintendent and the President of Roosevelt BOE, respectively. The Court need not address whether this premise is supported by any valid theory of standing because, as discussed supra, both organizational Plaintiffs lack standing to pursue this case.

**B.  Supplemental Jurisdiction**

Having dismissed Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses those claims without prejudice.  See 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction[.]")

**C.  Leave to Amend**

In the conclusion to each of their opposition briefs, Plaintiffs request leave to file a Second Amended Complaint.  (See ECF No. 29-4 at 10; ECF No. 30-5 at 16; ECF No. 31-4 at 18.)  Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), but it remains "within the sound discretion of the court to grant or deny leave to amend."  Manes v. JPMorgan Chase Bank, N.A., No. 20-cv-11059, 2022 WL 671631, at *8 (S.D.N.Y. Mar. 7, 2022) (citing Kim v. Kimm, 884 F.3d 98, 105 (2d Cir. 2018)).  Plaintiffs' request is denied because Plaintiffs have had ample opportunity to address the deficiencies discussed above and have not identified any proposed amendments.

Notably, prior to briefing the motion to dismiss, Defendants filed three pre-motion conference letters arguing that that Plaintiffs' Amended Complaint was deficient for various reasons, including lack of standing.  (See ECF No. 15; ECF No. 17; ECF No. 22.)  For example, Defendant Wantagh wrote that the "Amended Complaint is devoid of any specific factual allegations of actual, concrete injury sustained by the Roosevelt Union Free School District, its Board of Education, or its Superintendent of Schools" and that the organizational Plaintiffs "cannot assert constitutional rights on behalf of their students."  (ECF No. 15 at 1–2.)  Similarly, Defendant Lynbrook argued that "[t]here are no allegations of an actual injury sustained by the named plaintiffs."  (ECF No. 17 at 2.)  In response to these letters, Plaintiffs did not offer to amend their complaint or otherwise address the observed factual deficiencies.  Instead, they asserted that the

12

organizations have standing to sue on behalf of themselves as organizations and on behalf of their students, whose "injury of having their First and Fourteenth Amendment rights violated would suffice on their own but additionally Plaintiffs suffered emotional harm as a result of both incidents." (ECF No. 19 at 1–2.)

Plaintiffs do not identify any facts that, if added to the Second Amended Complaint, would help them to meet the pleading standard. "Denial of leave to amend is proper 'where the request gives no clue as to how the complaint's defects would be cured.'" Noto v. 22nd Century Grp., Inc., 35 F.4th 95, 107 (2d Cir. 2022) (quoting Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015)) (denying leave to amend where plaintiffs made the request in a conclusory fashion and only in the conclusion to their opposition brief); see also Oden v. Bos. Sci. Corp., 330 F. Supp. 3d 877, 904 & n.4 (E.D.N.Y. 2018) ("Plaintiff's request to amend, contained solely in his opposition memorandum, is procedurally defective since 'a bare request to amend a pleading contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15.'") (quoting Koehler v. Metro. Transportation Auth., 214 F. Supp. 3d 171, 178 (E.D.N.Y. 2016)).

Therefore, Plaintiffs' request for leave to file a Second Amended Complaint is denied.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs' claims are hereby DISMISSED WITHOUT PREJUDICE. The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated:    March 30, 2026
          Central Islip, New York

                                  /s/ JMA
                              JOAN M. AZRACK
                              UNITED STATES DISTRICT JUDGE